NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.F., et al., | : |
| Plaintiffs, | : Civil Case No. 14-5156 (FSH) |
| v. | : **OPINION & ORDER** |
| BYRAM TOWNSHIP BOARD OF EDUCATION, | : Date: November 7, 2014 |
| Defendant. | : |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiffs' motion for injunctive relief under the "stay put" provision of the Individuals with Disabilities Educational Act ("IDEA"), 20 U.S.C. § 1415(j), and a reversal of the New Jersey Office of Administrative Law's ("NJOAL") denial of such relief. (Dkt. No. 6.) The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

**I.    BACKGROUND**

Plaintiff J.F. is a thirteen-year-old, learning-disabled boy protected under the IDEA. (Pls. Br. 4; Def. Br. 5.) During the 2013–2014 school year, J.F. and his family were domiciled in the Westwood Regional School District ("Westwood District"). (Pls. Br. 5; Def. Br. 5.) In accordance with an Individualized Education Program ("IEP") in place with Westwood District for the 2013–2014 school year, J.F. attended the out-of-district Craig School, where he received specialized education and related services. (Pls. Br. 4; Def. Br. 5.) On May 5, 2014, Westwood Regional

1

prepared a new IEP for J.F., under which Westwood District would continue to place J.F. at the Craig School for the 2014–2015 school year. (Pl. Br. 4; Def. Br. 5.)

The following month, J.F. and his family moved to a region of New Jersey served by the Byram Township Board of Education ("Byram District").[1] (Pls. Br. 6; Def. Br. 5.) In June 2014, Plaintiffs registered J.F. for school with Byram District and provided Byram District with a copy of the May 5 IEP created by Westwood District. (Pls. Br. 6; Def. Br. 5.) On July 2, 2014, Plaintiffs met with Byram District administrative staff, who informed Plaintiffs that Byram District could offer J.F. educational programming in-district at the Byram Intermediate School that is similar programming to that outlined in the May 5 IEP. (Pls. Br. 6; Def. Br. 6.)

---

[1] Plaintiffs and Defendant disagree over the date when J.F. began to reside within Byram District. Defendant submitted to the NJOAL a copy of a lease to rent a property within Byram District that was signed by Plaintiffs on March 3, 2014. (Dkt. No. 6-4 at A147.) Defendant also submitted two May utility bills sent to Plaintiffs' address within Byram District. (Dkt. No. 6-4 at A152–53.) Plaintiffs, on the other hand, contend that they continued to reside within Westwood District through the close of the 2013–2014 school year, (Pls. Br. 5–6), and submit a copy of a moving receipt dated June 28, 2014. (Dkt. No. 6-1 Ex. I.) The precise moving date is immaterial to the question before the Court. Plaintiffs, however, clearly knew that J.F. would be educated by Byram District well before they contacted Byram District to arrange educational services appropriate to J.F.'s needs, choosing instead to negotiate the May 5 IEP with Westwood District, which Plaintiffs well knew they were departing. In the words of the Honorable Irene Jones, A.L.J.: "[Plaintiffs] did not register [J.F.] with [Byram] District until the end of June 2014 . . . . They met with [Byram District special education staff] only once, rejected any program that was not provided by the Craig School, and promptly filed a petition for mediation to force [Byram] District to fund the Craig School. They refused to consider or even observe any alternatives [Byram] District could offer. At all times, they were represented by counsel. . . . [Plaintiffs'] actions herein clearly constituted a litigation tactic to force [Byram] District to finance [J.F.'s] placement at the Craig School, regardless of the services that [Byram] District could offer." (Dkt. No. 6-4 at 186–87.) ALJ Jones was correct: The IDEA does not condone this type of litigation tactic.

a.  **Administrative Proceedings**

Plaintiffs requested mediation from the New Jersey Commissioner of Education on July 11, 2014, (Dkt. No. 6-4 at A1), which was subsequently converted to a Petition for Due Process before the NJOAL. On July 30, 2014, Plaintiffs moved for emergent relief under the "stay put" provision of the IDEA, seeking an injunction requiring Byram District to fund J.F.'s education at and transportation to/from the Craig School retroactive to July 1, 2014, through the pendency of proceedings before the NJOAL. (Dkt. No. 6-4 at A35.) On August 15, 2014, the Honorable Irene Jones, A.L.J., denied Plaintiffs' motion. (Dkt. No. 6-4 at A173.)

b.  **Procedural History**

Plaintiffs filed this action on August 18, 2014, seeking, among other relief, a review and reversal of ALJ Jones' decision and seeking an injunction under the "stay put" provision of the IDEA requiring Byram District to fund J.F.'s education at and transportation to/from the Craig School retroactive to July 1, 2014, through the pendency of hearings before the NJOAL. (Pls. Compl. ¶¶ 118–20, Dkt. No. 1.) On September 10, 2014, the Plaintiffs filed this motion.

II.  **STANDARD OF REVIEW**

Under the IDEA, any party aggrieved by the findings of an administrative decision may seek review of the decision by a district court. The reviewing court shall receive the administrative record, "hear additional evidence" upon request, and base its decisions upon "the preponderance of the evidence," granting "such relief as the court determines appropriate." 20 U.S.C. § 1415(i)(2)(C). The party "challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

The "District Court applies a modified version of de novo review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006); *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) ("[F]actual findings from the administrative proceedings are to be considered prima facie correct."). The purpose of affording "due weight" to the administrative proceedings is to prevent the courts from imposing "their own notions of sound education policy." *See Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982)). Under the "due weight" standard, the Court is required "to consider—although not necessarily to accept—the administrative fact findings." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995). If the Court departs from the ALJ's findings, it must find factual support in the record and "fully explain[] its reasons for departing from the state decision." *S.H.*, 336 F.3d at 270–71. The ALJ's legal determinations, however, are reviewed de novo. *See, e.g.*, *P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

### III. DISCUSSION

Plaintiff seeks an injunction under the "stay put" provision of the IDEA. This provision mandates that a "child shall remain in the then-current educational placement" through "the pendency of any proceedings." 20 U.S.C. § 1415(j). The stay-put provision is intended to prevent schools from unilaterally excluding disabled children from appropriate educational opportunities. *See Honig v. Doe*, 484 U.S. 305, 323 (1988). When the stay-put provision applies, it operates as an "automatic preliminary injunction" and "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors [for injunctive relief]." *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3rd Cir. 1996). "A parent may invoke the stay put provision when a school district proposes 'a fundamental change in, or elimination of, a basic element of' the current

4

educational placement." *W.R. v. Union Beach Bd. of Educ.*, No. 09-cv-2268, 2009 WL 4042715, at *4 (D.N.J. Nov. 19, 2009) (quoting *Lunceford v. D.C. Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C. Cir. 1984)). Plaintiffs contend that J.F.'s "then-current educational placement" at the start of this dispute was J.F.'s enrollment at the Craig School per the May 5 IEP.

Plaintiffs' argument, however, oversimplifies the analysis. First, a determination of current educational placement "cannot be resolved simply by determining whether the School District is proposing to change the physical location where [a student] will attend school." *Union Beach Bd. of Educ.*, 2009 WL 4042715, at *4; *see also White v. Ascension Parrish Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003) ("'Educational placement,' as used in the IDEA, means educational program—not the particular institution where that program is implemented."). Instead, the key inquiry under the stay-put provision is "whether the decision is likely to affect in some significant way the child's learning experience." *J.S. v. Lenape Reg. High Sch. Dist. Bd. of Educ.*, 102 F. Supp. 2d 540, 544 (D.N.J. 2000) (quoting *DeLeon v. Susquehanna Comm. Sch. Dist.*, 747 F.2d 149, 153 (3d Cir. 1984)); *see also Union Beach*, 2009 WL 4042715, at *4 (same). This is a fact-specific inquiry, and "only matters that will significantly impact the child's learning should be considered a change in educational placement for the purposes of the IDEA." *Lenape*, 102 F. Supp. 2d at 543–44. "It is clear that the 'stay put' provision does not entitle parents to the right to demand a hearing before a minor decision alters the school day of their children. . . . [F]or instance, replacing one teacher or aide with another should not require a hearing before the change is made." *DeLeon*, 747 F.2d at 153.

Second, J.F. transferred from Westwood District to Byram District. In cases of intra-state transfer from one school district to another, New Jersey and federal regulations require that the receiving district "without delay, in consultation with the student's parents, provide a program

5

comparable to that set forth in the student's current IEP." N.J.A.C. § 6A:14-4.1(g); 34 C.F.R. § 300.323(e) (stating receiving district must provide "services comparable to those described in the child's IEP from the previous public agency"). Obvious exigencies underlie these regulations: a student that transfers from one corner of the state to another will not practically be able to receive an exactly duplicative educational experience. A comparable program that offers similar or equivalent educational services that will not significantly impact a child's learning, therefore, will not trigger the stay-put provision.

In other words, the issue before this Court is whether Byram District offered J.F. a comparable educational program in accordance with federal and state regulation or proposed a unilateral and fundamental change to J.F.'s IEP that would significantly impact his learning experience and constitute a change in educational placement that triggers application of the stay-put provision.

ALJ Jones found that Byram District offered J.F. educational services comparable to those available at the Craig School. (Dkt. No. 6-4 at A179, A183.) J.F.'s May 5 IEP indicated that J.F. "has been diagnosed with a significant learning disability, affecting reading and spelling, consistent with dyslexia; [he] has also been diagnosed with ADHD; [and] he has an IQ of 109." (*Id.* at A177.) The May 5 IEP listed modifications that would allow J.F. to participate in the general education curriculum—such as "[p]rovide preferential seating" and "[g]ive specific, immediate feedback"—but none of these modifications specifically related to the Craig School. (*Id.* at A176.) J.F.'s IEP indicated that he "needs an adapted curriculum and specialized instruction with extended practice and review in order to learn new skills," and the IEP recommended an Extended School Year ("ESY") program due to J.F's "significant delays in reading and writing" and "to prevent regression over the summer." (*Id.* at A176–77.) Byram District offered to place J.F. immediately

6

in an ESY summer reading clinic "operated through a shared partnership with Centenary College, who provided Wilson-trained special education teachers enrolled in their Reading specialist program to work with students in Byram in groups of 2 or 3." (*Id.* at A178.) Byram's programming is offered to students with "learning disabilities in reading and writing," "is designed to prevent regression" in students with such disabilities, and "includes multisensory reading instruction that is scientifically based." (*Id.* at A178–79.)

ALJ Jones' findings are supported by the record before the NJOAL submitted to this Court. Moreover, Plaintiffs offer scant evidence otherwise[2] and make almost no arguments as to how the educational services offered by Byram District fail to compare to those available at the Craig School.[3]

---

[2]  Plaintiffs do point to a difference in time allotted to reading between J.F.'s 6th-grade schedule at the Craig School and the proposed 7th-grade schedule for J.F. at the Byram Intermediate School. The 7th-grade Byram District schedule allots 22 minutes per day specifically to reading, whereas J.F.'s 6th-grade schedule at the Craig School allotted 1 hour and 25 minutes to reading Monday through Thursday and 1 hour and 5 minutes on Friday. (*Compare* Dkt. No. 6-1 Ex. E *with* Dkt. No. 6-1 Ex. F.) This sole difference (even were the Court to assume that a 7th-grade educational schedule for J.F. at the Craig School would offer an equal amount of reading time) fails to outweigh the facts presented by Defendant and highlighted by ALJ Jones that Byram District offered Plaintiffs a comparable educational program for J.F. upon his registration in the district.

[3]  Plaintiffs make much of an alleged failure of Byram District to implement J.F.'s May 5 IEP "as written." *See* N.J.A.C. § 6A:14-4.1(g)(1) (stating that when a receiving district and a transfer student's parents agree, the prior "IEP shall be implemented as written"). Plaintiffs only point to one aspect of the educational program set forth in the May 5 IEP that Byram District did not agree to implement: the district's funding of J.F.'s placement at the Craig School. As previously noted, however, the transfer-student regulations cannot be reasonably read to require a receiving district implement an exactly duplicative educational experience; such a reading would lead to practical absurdities. This is in accordance with the federal stay-put provision, which, as noted, protects J.F.'s right to an appropriate "educational program—not the particular institution where that program is implemented." *White*, 343 F.3d at 379.

Plaintiffs also argue that Byram District has failed to offer a new IEP for J.F. within thirty days of J.F.'s enrollment within Byram District. Had Byram District not agreed to implement J.F.'s May 5 IEP, Byram District would be required to "conduct all necessary assessments and,

Accordingly, this Court finds no reason to depart from the factual findings of the ALJ that Byram District offered J.F. educational services comparable to those detailed in J.F.'s May 5 IEP. As such, Byram District did not propose a unilateral change in J.F.'s educational program, and the stay-put provision of the IDEA is not applicable.

### IV.     CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 7th day of November, 2014,

**ORDERED** that Plaintiffs' motion (Dkt. No. 6) is **DENIED**.

                                                    **IT IS SO ORDERED.**

                                                     **/s/ Hon. Faith S. Hochberg**
                                                    Hon. Faith S. Hochberg, U.S.D.J.

---

within 30 days of the date the student enrolls in the district, develop and implement a new IEP for the student." N.J.A.C. § 6A:14-4.1(g)(1). This argument presumes the conclusion the Plaintiffs seek from the Court: namely, that Byram District did not agree to implement the educational program in J.F.'s May 5 IEP and, instead, proposed fundamental changes to his educational services. Regardless, whether or not Byram District formally implemented a new IEP within 30 days of J.F.'s enrollment has no relevance to whether Byram District's offer of similar educational services upon J.F.'s enrollment constituted a fundamental change to J.F.'s educational program that triggers the stay-put provision.